Cite as 2020 Ark. App. 182

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-19-336

|  |  |
|---|---|
| KOQUISE EDWARDS, CONNIE PONDS, AND DEBORAH EDWARDS<br><br>APPELLANTS<br><br>V.<br><br>RONALD HART AND CURTIS HARRAWAY, SR., CO-ADMINISTRATORS OF THE ESTATE OF MONROE HART, DECEASED<br><br>APPELLEES | Opinion Delivered: March 18, 2020<br><br>APPEAL FROM THE CLARK COUNTY CIRCUIT COURT [NO. 10PR-15-32]<br><br>HONORABLE GREGORY L. VARDAMAN, JUDGE<br><br>REVERSED AND DISMISSED |

**BART F. VIRDEN, Judge**

This is an interlocutory appeal from the probate division of the Clark County Circuit Court.[1] On appeal, appellants Koquise Edwards, Connie Ponds, and Deborah Edwards (Oklahoma heirs) assert that the probate division of the circuit court (probate court) was statutorily time-barred from administering the estate of Monroe Hart. Alternatively, the appellants argue that the probate court erred by refusing to grant their request to set aside the sale of the real property included in the estate. We agree that the probate court was statutorily prohibited from administering the estate, and we reverse and dismiss.

---

[1]Our jurisdiction is pursuant to Ark. R. App. P. Civ.-2(a)(12).

I. *Relevant Facts*

On August 21, 1999, Monroe Hart, who never had children, died intestate in Oklahoma. Monroe's heirs-at-law consist of the descendants of four of his siblings. When Monroe died, it was assumed that he owned three contiguous plots of timber land located in Clark County. Indeed, Monroe Hart was listed in the tax record as the owner of the land. On April 20, 2015, two of Monroe's relatives, Ronald Hart and Curtis Harraway, Sr., petitioned the probate court to admit Monroe's estate to probate and requested that they be appointed the personal representatives of the estate. The probate court granted the petition and named Hart and Harraway co-administrators. An inventory of the estate showed that its only assets were the three plots of land (150 acres), valued at $300,000 total, with an unknown value of the timber on the land. In June 2015, the co-administrators published notice of the appointment of personal representatives for the estate in *The Standard*, a local newspaper that circulates in Clark and Pike Counties. In February 2016, Hart and Harraway then petitioned the probate court for approval of the sale of the land for $120,000 to LTB Land & Timber Company (LTB). The co-administrators explained that the land had been "cut over" (heavily logged) and this was the best offer they would get. After the proposed sale of the land had been arranged, an appraiser assessed the fair market value of the land and estimated its value to be $120,000.

On March 24, 2016, the court approved the sale. Then, during a title search, LTB discovered that Monroe Hart's name was not on the deed to the three plots. Initially, there was some confusion about who held title to the property, and the circuit court set aside the sale. The co-administrators nonsuited the petition for probate, but two days later, the circuit court canceled the order for dismissal and reopened the estate. In the order reopening the case, the probate court found that Clark County Abstract Company had discovered that the last title holders to the land were actually Filmore Hart and his brother Jacob Hart (Monroe's father), who had both been deceased since the 1930s. Monroe, who had for some years paid the property taxes on the land, had been listed on the tax record as the property owner. The court advised the co-administrators to file a quiet title action in the circuit court. Hart and Harraway quieted the title in circuit court,[2] and in November they petitioned the probate court to order distribution of the sales proceeds—minus the administration fees, attorney's fees and costs, costs related to taking care of the land, and tax payments made over the years.

In February and March 2017, the co-administrators placed notices in *the Arkansas Democrat-Gazette* and the *San Jose Mercury News* informing potential heirs of the sale of the land. In April, the co-administrators filed an amended petition for distribution of the

---

[2]Case number CIV-2016-071.

3

proceeds and to determine the final method of distributing the estate. In May, the probate court ordered the co-administrators to determine that all heirs had been notified.

In January 2018, the co-administrators filed a motion to determine heirship and for partial or final distribution of the proceeds. According to the co-administrators, from January to April, direct notice was sent to "all known heirs." A hearing was set for May, but it was postponed because a putative heir from Oklahoma contacted the probate court and explained that a substantial number of heirs had not received notice. The circuit court ordered the co-administrators to give notice to all heirs.

On June 8, the Oklahoma heirs filed an objection to the final distribution and a motion to set aside the sale of the land. The co-administrators filed another amended petition for final distribution and to close the estate.

In July, after a hearing, the court denied the motion to set aside the sale of the land. The court found that the Oklahoma heirs were not notified of the opening of the estate or the sale of the estate property. The court noted that the co-administrators notified the Oklahoma heirs *after* the sale "but only after the Court instructed the Petitioners" to determine that all the heirs had been notified. The court also stated that the sale was "problematic," "premature," and "not in the best interest of the estate and heirs," and that it surmised that the sales price of the land was less than the actual value. The court ordered the attorney's fees and administrative fees be paid from the proceeds, and it ordered Harraway be reimbursed for tax payments from the proceeds as well. The court denied the

co-administrators' request to close the estate and ordered that after a complete list of heirs was compiled, the final distribution would be made. The Oklahoma heirs timely filed their appeal.

## II. *Discussion*

We agree with the Oklahoma heirs' first argument that the administration of the estate was time-barred, and we reverse and dismiss.

This court reviews probate proceedings de novo on the record, but it will not reverse the decision of the circuit court unless it is clearly erroneous. *Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007). In conducting our review, we give due regard to the opportunity and superior position of the circuit court to determine the credibility of the witnesses. *Id.* Furthermore, while we will not overturn the circuit court's factual determinations unless they are clearly erroneous, we are free in a de novo review to reach a different result required by the law. *Hetman v. Schwade*, 2009 Ark. 302, at 5, 317 S.W.3d 559, 562.

The cardinal rule of statutory construction is to give effect to the intent of the legislature. *Bell v. McDonald*, 2014 Ark. 75, 432 S.W.3d 18. We are to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory interpretation. *Id.*

Arkansas Code Annotated section 28-40-103 sets forth that

(a) No will shall be admitted to probate and no administration shall be granted unless application is made to the court for admission to probate within five (5) years from the death of the decedent, subject only to the exceptions stated in this section.

(b) This section shall not affect the availability of appropriate equitable relief against a person who has fraudulently concealed or participated in the concealment of a will.

(c)(1) Insofar only as it relates to real property in Arkansas, or any interest in real property, the will of a nonresident which has been admitted to probate in another appropriate jurisdiction may be admitted to probate in this state without regard to the time limit imposed by this section.

(2) However, rights and interests in the real property which, after the death of the testator if it is assumed that he or she died intestate, have been acquired by purchase, as evidenced by one (1) or more appropriate instruments which have been properly recorded in the office of the recorder of the county in which the real property is situated and which would be valid and effective had the decedent died intestate, shall not be adversely affected by the probate of the will in this state after the expiration of the time limit imposed by subsection (a) of this section.

The statute clearly sets forth that the court has no authority to administer an estate past the five-year limit. The co-administrators assert that "Ark Code Ann. 28-40-103 is instructive regarding the normal five-year term but should not be controlling when almost 100 years have passed since the death of the title owners." The passage of time is not an exception to the statute, and the co-administrators' argument is not well taken. Because of our above holding, we do not reach the remaining issues on appeal.

Reversed and dismissed.

ABRAMSON and HIXSON, JJ., agree.

*Legacy Law Group*, by: *Bryan Jay Reis* and *Philip B. Montgomery*, for appellants.

*Sanders Law Firm*, by: *Bob Sanders*, for appellees.